May it please the Court, Michael Kottner for Petitioner, Albelter Ajanel. I would like to serve one minute for rebuttal, if possible. Your Honor, in this case, the area of the most egregious error is in regards to the Convention Against Torture claim in regards to the denial of the motion to reopen. This Court has specifically held in Vert v. INS that a reviewing court, such as the BIA, which we consider the Board of Immigration Appeals, must show proper consideration of all factors, both favorable and unfavorable. This is clearly a legal standard the BIA must follow, and a standard that review is therefore under a de novo review before this Court. It's determined by this Court in Malconian v. Ashcroft. In clarifying this standard, this Court has additionally held that, quote, boilerplate decisions which set out general legal standards yet are devoid of statements that evidence an individualized review of the petitioner's circumstances are unacceptable. In fact, in a case heavily relied upon by the Respondent, Galli v. INS, this Court has held that the Board's opinion must contain a statement of its reasons for denying the petitioner relief adequate for us to conduct our review, and we must remand for clarification if the Board fails to provide an adequate statement for the reasons for its decision. The BIA in this case, in its denial of the motion to reopen for the CAT claim, simply stated, we have reviewed the Respondent's CAT request and find that he has failed to establish prima facie eligibility. Accordingly, the motion is denied. This decision fails to even reach the, quote, boilerplate decision standard frowned upon by this Court, as there is no basis for denial which deprives the petitioner of proper review. Therefore, in accordance with Galli, a remand for full and proper consideration of the CAT claim in regards to country conditions is justified. Kennedy. Well, in that aspect of the case, is it fair to read that order in light of the order denying the appeal, which raised all of the same basic issues? Judge Reiner, I would say no in respect that each claim that there's three basic issues in regards to a case like this. We have asylum, withholding of deportation, and convention against torture. But don't they all come from the same facts? They all do come from the same facts, but they're held under different standards. For example, there are certain bars under asylum and withholding of deportation, but there are certain bars that do not apply to convention against torture. In regards to, for example, in convention against torture, it's an absolute case in regards to you cannot be returned to a country if there is likelihood of future torture. Well, all that means is you consider more in the asylum case than you do in the torture case. Yes, Your Honor. In asylum, it's got the events have to have occurred for a particular reason. In torture, it doesn't matter what the reason. Absolutely, Your Honor. So that's not an argument for not looking at the first decision, because the first decision is more extensive than the second. I understand, Your Honor. But as the convention against torture is based more on the actual country conditions in this case, in Guatemala, as opposed to a Petitioner's certain circumstances. So therefore, that actually proves more that it's an individualized review for each different claim. And when we have a BIA decision, first of all, this case didn't go before the immigration judge, which is why we're asking for a remand. We don't know what the immigration judge denied him upon. We understand that the BIA had the case before, but we don't know if it was denied based on a country conditions in regards to them being a stable country at this point, because it was a different standard. The burden of proof in a convention against torture claim is more likely than not that Petitioner will suffer, be subject to torture of the consent. The Catt claim didn't go before the I.J. The Catt claim did not go before the I.J., Judge Wadlah. It went before the Board of Immigration Appeals. The problem with that is, is the Board of Immigration Appeals has been known to rubber stamp most of their decisions, as you're probably aware of the streamlining procedures that have been challenged numerous times. And what is worse in this case is they didn't even use the streamlining procedure. They just pretty much rubber stamped it and sent it on. So therefore, he didn't have a full consideration of his C.A.T. claim, which is why we're asking for remand. Petitioner here detailed what he described as arbitrary detention for 20 days in Guatemala based on an imputed belief of his participation in the guerrilla faction or similar military groups. In Guatemala, it's kind of like a ping-pong ball stuck in between two situations. We have the guerrilla factions. Even though there were peace accords assigned, it's pretty much well known that they're still prevalent in Guatemala, especially in the situation as we have where the I.J. relied on the country reports and stated that there was peace accords struck in this case and that things are all of a sudden gone away. But really my question is, you know, aren't all of the issues that you would discuss in the torture decision fully discussed in the decision on asylum made by the immigration judge? Well, like I said, Your Honor, it's more I don't think that there was a proper review of the actual country conditions in Guatemala at this point. I think that There wasn't a proper review when they reviewed the asylum case? No, I don't believe so, Your Honor. I believe that it was based more on an individualized case. And if you look at the actual All right. But see, what you're really saying doesn't go to my question.  If it considers the right factors, can we look to the decision made in the asylum case and consider that when considering the adequacy of the torture decision? Your answer just now was, well, the asylum case is not properly dealt with in the original decision. That's fine. But that's not the question. The question is, can we consider the asylum decision in deciding whether the torture decision properly considers factors? Yes, you can look to the decision for the asylum and the withholding a deportation case. But the problem with that, as I stated, Your Honor, is that it's more of an individualized review. And if we go back to the IJ's decision, a lot of that decision focused on discretion and focused on the immigration judge's apparent focus on the Okay. Well, what you're saying is that that decision is not an adequate decision in general, not that it wouldn't be adequate for the torture. It does discuss, as you said, the country conditions. You just don't agree with the way it's discussed. Yes, Your Honor. That's true. Okay. Like we said, Your Honor, in the Convention Against Torture Claim, he has testified that he was bound by state police and by actual, like I said in the beginning, he's a ping-pong ball in between two groups. We have the state actors with the police, and then we also have the guerrilla factions. The problem is, is that his father was in the military beforehand, and therefore, that's going to put him in the middle of things. That's going to impute a political opinion to him in regards to the guerrilla factions, whoever was against the former. Is that enough to find torture that he's put in that position, or is it some specific act that you consider? A specific act in regards to, Your Honor, in regards to his detention and the beating. They beat him out, and they beat it out of him in asking him whether he was a communist or whether he was a guerrilla. That's a clear source of torture in this respect, Your Honor. Like we said, this is highly relevant to this Court because the Court has held in Kalmas v. INS that evidence of past torture is important in determination of a C.A.T. claim. Like we also said, country conditions are very important here because even though the I.J. relied on these heavy accords as pretty much making everything good in Guatemala, we have a difference, pretty much a night and day difference between the rural areas and the urban areas. You have less than two minutes left. Do you want to save time for rebuttal? Yes, Your Honor, I would like to save time for rebuttal. Good morning. May it please the Court. Opposing counsel. My name is Elizabeth Stevens from the Department of Justice, appearing on behalf of the Attorney General. The first thing I would like to address is the Board's decision on the Convention against Torture claim. The Board's decision on the Convention against Torture claim. Did you ever file an opposition to the appeal on the C.A.T. case, the motion to reopen? The office did not file a brief on that claim. Usually we take that to mean that there's a non-opposition, and we just grant it. The office has also requested an opportunity to brief this claim. I'd be happy to address the Court on this claim. You didn't file a brief opposing it. At least I couldn't find a brief. I couldn't find anything. I admit that there was no brief filed on this point. If the Court would like me to address it. What did you file? Did you file letters in the last week, it seems? Yes. Yes, we filed. And what did you ask in those letters? Did you ask for leave to file a brief? Yes, we did. That was in the first letter that was filed. Did you ask for leave to file a brief? Yes, we did. Did you file a brief? We didn't act on your leave. On your request. Did you ask for leave? Well, just the last couple of days. Oh, I haven't seen the letter asking for leave to file a brief. The letter was filed, I believe, on the second, and then there was a second letter filed addressing some of the other issues in the case two days later. Do you have any explanation for why your office failed to file a brief? I can't. I have no factual knowledge. I can posit why. Do you have no idea why you failed to file a brief? Well, you said you could posit why. I mean, I can make several suppositions. I do not know. I was not involved in the early briefing on this case, and I do not know why. Normally, office policy would be that a brief would be assigned when another brief comes in. It appears from the fact that there was no brief filed that the motion to use the initial brief of Petitioner as the brief on the consolidated case did not come to the attention of the briefing assigners, and that's why it did not go. That is a supposition. I do not know that that is exactly the fact. In any case, because the Board cited Camalthus in its decision on Catt, where Camalthus is the decision of this Court that specifically addresses where the claims, the factual underlying of the Catt claim, is the same that was in Asylum and Withholding,  both credibility determinations and the other determinations can carry over in a denial of Catt relief. And there is nothing in the brief request on the motion to reopen that shows any evidence that Mr. Ahanel would be singled out for torture should he be returned to Guatemala. There is no showing that there is more likely or not that that would happen. I'm just really troubled by the fact that you didn't file a brief because I've seen so many cases where the Board just denies an asylum claim because there isn't a brief filed by the Petitioner, and your office routinely just denies claims on that ground. I find that really troubling because you're asking for a special treatment that you don't even give to the Petitioners. As I said, I was not involved in the early briefing. I can't address that from any specific knowledge or anything else. I can only say what I know about – I can give the Court the benefit of my knowledge on Catt and claims and other things, and if you would like, I'll move on to the Asylum and Withholding of Removal decisions. Let me just ask you one other thing. I did see two letters that your office submitted. I find one here. One is dated December 1st, which is the supplemental authority on Roy v. Ashcroft. What's the date of the other letter? I can't see. One is December 1st and one is December 3rd. I was assigned the case on the 2nd. I know we did get both. I'm just looking for the December 3rd letter. All right. I brought a copy of it with me. If you would like me to hand that to you, if you would like me to approach the bench. Yeah. Could you do that? The December 3rd letter? Yes, please. I'd like to see it, too. Did you have that letter? Did you get that letter? Yes. All right. So your position is, aside from the brief issue, that the decision is adequate because we read into the decision, the earlier decisions? Yes, that is our position. The board specifically did cite Camalthus, and that is this Court's authority that the asylum and withholding decisions can carry over into a CAP decision when there is no other evidence that would be specific to torture that's been presented. All right. The in Colubi, we said that the board can't just identify a factor without analyzing it and explaining the reason that it doesn't outweigh another. When in Colubi, the factor was that he would be separated from his wife if he were deported. And the decision said just the statement that he would be separated is conclusory and as such falls short of setting out terms sufficient to enable us as a reviewing court, et cetera. It also said that what you must do is that Colubi's separation from his wife should be considered and how it weighs in the balance of favorable and unfavorable factors should be explained with enough clarity so that we can understand the rationale. Now, how do you think that applies to the statements here about is having a citizen wife and citizen child? In addressing the discretionary determination to deny the motion to reopen and remand for adjustment of status, the board does state that they are considering the equities of marriage to a U.S. citizen and a U.S. citizen child and noted that it is a favorable factor and it does weigh here, but they also specifically state that they believe that these equities do not overcome the fact that he has a criminal record and his, the other factors that are discussed in the earlier assessment. But isn't that always true when you just list the factor and just say it doesn't overcome? Isn't that what Colubi's talking about, that you can't just list the factor and say it doesn't overcome? This, the board decision here is, was done under the secondary streamlining of 1003.1E5, which is single-member review, where the attorney general, when they set up this type of review, state that the reviewing court should take a look at both what the board has written and what the immigration judge has written. Now, the immigration judge did not specifically discuss this in the matter of the adjustment of status because that was not before him at that time, that point, the petitioner was not eligible. But the immigration judge did expound greatly on the factors when he was talking about a discretionary, that he would deny asylum in his discretion due to the lack of rehabilitation, the lack of remorse, and the seriousness of the crime and its effects. So all of those should be considered as a whole when we're looking at this particular exercise of discretion, but it's the same balancing factors. The same equities were before the immigration judge at the time. Well, the question is, is whether Kaloubi says that you have to have a discussion of the positive factors and that you can't just list them or whether it only says you've got to explain why the negative factors are what they are. I mean, there's a big there's certainly an adequate discussion of the negative factors, why they are bad, what's wrong with them, and why that justifies your conclusion, the negative factors. You know, Kaloubi is fairly recent. But in reviewing it, it seemed to require not just a statement of the positive factor, but a description of the fact that the description of that factor so that we can understand what your view of it is, not just to say he's separated from his wife, as if that's the fact. But the explanation of the weight you give that factor and why, you know, you could say, well, being separated from your wife is not such a bad thing. It's kind of healthy. Or you could say being separated from your wife is a very serious factor, which we consider outweighs almost everything, but not drunk driving. All right. I just wanted to get your view of that case, because it's. My view of that case in line with this case is that the immigration judge did do that. The immigration judge said that the factor of his wife and U.S. citizen child were very strong factors, but were not outweighed by the seriousness of the drunk driving. That was the conclusion of the immigration judge. And that, I would posit, that the Court has carried over into this decision that affirms, adopts and affirms the whole articulation of the immigration judge and goes on to talk about the equities in their discretionary, the same equities applied in their decision to deny the motion to reopen and remand in its discretion. I see that I'm out of time. If there's anything that you. We've taken your time on two issues. I don't know whether they are. Did you have something in particular you thought. Yes. There are two other issues that I'd like to address, if the Court would grant me the time. Give you a couple of minutes. The first one is Petitioner has claimed that his arrest by the police is past persecution. In this case, this is a single arrest, very similar to the second arrest in Mihalev, which is a recent case decided by this Court, where this Court found that the fact that the police picked somebody up for walking around in an area without identification did not constitute persecution. That is the exact factual circumstances here. He was walking around at a time when he knew he had to have I.D., but he didn't have his I.D. on him. They picked him up. He was wearing clothing that made him possibly seem like a gorilla. Once they found out that he was not, he was released. Yes, there was some mistreatment there. The government acknowledges that he did talk about beating. But this one instance does not show past persecution or even that there's a likelihood of torture in the future. There is other evidence in the record that his family received threats. Now, there is a recent case from this Court saying that threats are sufficient to constitute past persecution. However, in that most recent case, the persecution and the threats escalated over time to the very end. In this case you're talking about Kaiser? I'm sorry? You're talking about Kaiser? Which case are you talking about? Yes, Kaiser. In this case, the threats seemed to be most heavy at the time of 1985 to 1986, or prior to 1985, when the family, according to Petitioner's testimony, had to move around maybe twice a week. They had to go and go to somebody else's house or go camp out. But then things de-escalated. They only, maybe once a month he talked about. There's nothing, although there's one statement that the threats continued after 1989 when his father no longer had contact with his family, there's nothing to show that the threats were increasing or that there was any real effort to carry out any types of threats. His mother, his sister still live in Guatemala. There's nothing to show, there's no evidence in the record that they have had any threats or have faced any type of perceived violence or whatever on account of anything, or on account of the fact that the father used to be part of the military forces. So, therefore, the government would posit that there is no showing, there is no showing of an objectively reasonable, well-founded fear of future persecution in Guatemala given the current country conditions. According to that, the government requests that you deny the petition for review. Thank you very much. Thank you very much. All right. We have a little time for rebuttal. Thank you, Your Honor. As Respondent did state, did state, the I.J. relied heavily on, in regards to the asylum claim, in focusing on his DUI as being a particularly serious crime. I would just like to submit to the record that recently the United States Supreme Court in Leocal v. Ashcroft has specifically held that a DUI, even in the aggravated context, is neither an aggravated felony nor a crime of violence, which means that it's not a particularly serious crime. Now, in regards to the CAT, going back to the CAT claim, it's important to note here that all we're asking for is a remand for full consideration of the current country conditions and a proper review. And as I stated previously, he didn't receive that. As the Respondent pointed out, the I.J. did focus on credibility. But credibility, in the case that they actually cited, countless, this Court has held that it's not dispositive in a CAT claim in regards to the country conditions. And what I'm saying is that the country conditions can actually negate the negative credibility finding. Now, although there was a credibility finding, it's important to note that the country conditions can, in fact, negate that. The citation of supplemental authority that Respondent was speaking of, the only issue I have on that is that it's a Fifth Circuit case and, therefore, that suggests that it is only persuasive at best, not controlling on this Court, and that is a matter at worst, it could be a matter of first impression before this Court whether they can actually go in and incorporate portions of the asylum claim and withholding a deportation. In sum, we would like, all we are asking for in regards to the CAT claim is a remand so we can have a full consideration. Thank you. Let me ask you one other question. Sure. In one of the decisions, is this a case in which the Board, one of the decisions noted that the INS contended that there was a second conviction? The IJA did not mention a second conviction. No, but it was in the BIA decision. We don't know. No, the IJA was stating it, but that goes back to the problem. We don't know what the BIA focused on because they pretty much rubber stamped the case. But as I recall it, it was just a statement that the INS claimed that there had been a second conviction and then that there had been no response. It's in the Board order. This must have happened after the IJA report. In the Board order, it says the INS contends that the Respondent was also convicted in 2001, and that's the second conviction, they say. Although the record does not contain a copy of the conviction documents, we observe that the Respondent has not filed any statement refuting the service's allegations. Do you have a position on what we should wait, if any, we should give to a second conviction? As we had said, there has been a significant case, and I apologize, I don't have the specific slides before this Court, that says that even an aggravated DUI, which would have been probably in this context as he had the second DUI, is still not considered a crime of violence at all. Are you conceding there is a second DUI? No, I'm not conceding that there's a second DUI. That's what I'm asking. What should we? I would say, Your Honor, I would submit, Your Honor, that without proper record of conviction, that they cannot be used for the purposes of review. So the INS in front of the BIA argued that there was a second conviction but didn't submit any evidence. They did not? Not that I'm aware of, Your Honor. Well, the BIA says that, but it also says there was not – there wasn't an opposition to that statement. I'm not – in regards to the second – even if there is a second conviction, it's not a – it's not a question. We're trying to find out first whether we should assume there is a second conviction or say that that's something we can't consider. I understand, Your Honor. I assume that this was represented by the INS in some kind of written filing with the board. I would submit, Your Honor, that – Do you know what it was – how it got there? In what form? Many times – many times what the INS will rely on is they'll rely on what's called rap sheets, and a lot of times – No, no. I'm asking how did the – what did the board get from the INS that led to this I'm unclear as to what – as to what led them to that, Your Honor. All right. Thank you. Case just argued will be submitted. The next case for oral argument is the Ambacoff v. Ashcroft. Thank you, Your Honor. Thank you, Your Honor.
judges: Reinhardt, Hall, Wardlaw